2026 IL App (1st) 260340-U

Fourth Division
Filed May 28, 2026

No. 1-26-0340B

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of Cook County |
| | ) | |
| v. | ) | No. 25 CR 1236501 |
| | ) | |
| JACQUALYN PHELPS | ) | The Honorable Diana Kenworthy, |
| Defendant-Appellant. | ) | Judge, presiding. |
| | ) | |

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Navarro and Justice Quish concurred in the judgment.

**ORDER**

¶ 1    *Held*: There was enough evidence to conclude the defendant committed a detainable offense. The trial court reasonably denied pretrial release, concluding that release conditions would not safeguard the victim or community. Affirmed.

¶ 2    Defendant, Jacqualyn Phelps, appeals from the denial of pretrial release. For the following reasons, we affirm the trial court's judgment.

¶ 3                                I. BACKGROUND

¶ 4    The State charged Phelps with three counts of aggravated battery. On October 12, 2025, at her first appearance, the State petitioned to detain Phelps as a "real and present threat" under 725 ILCS 5/110-6.1 (West 2024). Defense counsel had just received the case and did not dispute the facts. The court relied solely on the State's information, which was presented by proffer.

¶ 5      According to the State's proffer, on September 29, 2025, at approximately 5:42 p.m., Khadijah Simmons, the alleged victim, arrived in the alley of a residence to give money for cold medicine to an unnamed individual the parties referred to as Phelps's codefendant.[1] Codefendant had previously been in a relationship with Simmons, and they had a child together. He had also canceled plans to celebrate his birthday with her that night due to illness. When Simmons arrived, she found codefendant and Phelps inside of Phelps's Buick SUV, with Phelps in the driver seat. Phelps and codefendant both got out of the SUV, and Simmons started arguing with them about a social media post that another woman codefendant was seeing had made and that Phelps had reposted that was disrespectful to codefendant and Simmons's child. While Simmons and codefendant argued, Phelps retrieved an unknown chemical substance from her vehicle and then "drench[ed]" Simmons with it. The chemical immediately burned Simmons's skin, particularly her shoulders, back, buttocks, thighs, and eyes. She temporarily lost her vision, though her eyesight has since recovered. After codefendant's sister came out of the residence and helped Simmons flush her eyes, Simmons drove down the alley a short distance and called 911. Ultimately, she was taken to Trinity Hospital by her sister after waiting 45 minutes for an ambulance. Simmons's sister noticed a strong odor of bleach coming from Simmons. Medical personnel determined that Simmons had received chemical burns on her back, right flank, chest, right breast, leg, and eyes. They were unable to determine the substance that had caused the burns. Simmons was later transferred to the University of Chicago Hospital for further care and assessment before being discharged on October 1. At the time of the detention hearing, Simmons's wounds were still healing, but doctors had already determined that she would require plastic surgery to at least some extent. On October 11, Simmons identified Phelps as the person who had thrown the chemical substance on her.

---

[1]  Even though Phelps is the only charged defendant in this case, this individual was referred to as her codefendant at the relevant hearings.

¶ 6    The State further proffered that Phelps's criminal history included a 2025 conviction for aggravated battery of a police officer (resulting in two years of probation); a 2019 conviction for aggravated unlawful possession of a weapon, which was based on her having a prior conviction (no sentence was specified); a 2017 conviction for harassing a witness (resulting in two years of probation); and a 2014 conviction for aggravated battery in a public place (resulting in eight months of imprisonment). At the time of the incident, Phelps was on pretrial release for a pending charge of resisting a peace officer, and she also had a charge of driving on a suspended or revoked license pending. She also had "three prior cases in which warrants [had] been issued" in 2019, 2017, and 2014.

¶ 7    Defense counsel argued that conditions could be imposed for release, emphasizing the defendant's children, including one child with autism, and Phelps's community outreach work.

¶ 8    The trial court found that the State had satisfied its burden by clear and convincing evidence that Phelps committed the charged offense. Based on the evidence presented, the arguments of counsel, victim identification, and the severity of the injuries, the trial court found the alleged conduct to be an especially violent and serious attack.

¶ 9    The trial court proceeded to assess whether Phelps presented a genuine and immediate threat to the safety of the victim or the broader community. The court evaluated arguments from defense counsel, Phelps's criminal record—including several aggravated battery convictions and a conviction for harassing a witness who was a family member—Phelps's PSA score of level three with an indication of potential new violence, and the seriousness of the victim's injuries, which necessitated ongoing medical care. The trial court also considered the circumstances of the offense, noting that the incident escalated from a verbal altercation to Phelps's use of a harmful chemical substance against the victim. Based on these factors, the trial court found that the defendant posed a real and present threat to the victim and the community.

¶ 10    The trial court then considered whether there are any conditions or combination of conditions that could mitigate that threat. In doing so, the trial court emphasized the seriousness of the aggravated battery involving a harmful substance, the severe chemical burns and physical injuries

suffered by the victim, and the nature of the dispute that preceded the incident. The trial court further noted that Phelps intentionally walked to her vehicle, retrieved a noxious chemical substance, and poured it on the victim.

¶ 11    After considering Phelps's prior convictions and history of violating the laws, the trial court concluded that no conditions or combination of conditions would sufficiently mitigate the threat posed to the victim and community. The trial court therefore granted the State's petition to detain, ordered Phelps to remain in custody, and advised Phelps of the right to file a motion for relief. The trial court further stated that every subsequent judge would revisit the order of detention and consider it.

¶ 12    On December 12, 2025, Phelps filed a petition for pretrial release in which the defense proffered new information relevant to detention. As to the charged incident, the defense proffered that, according to her own account and that of unnamed witnesses, Simmons was initial aggressor and had sprayed both Phelps and codefendant with bear mace. The defense also proffered that, only days after the incident, Phelps had started undergoing treatment for her mental health, including anger management, and that at the time of her arrest, Phelps had been engaged in community outreach work with Urban Roots Alliance, helping families have everything they needed to get through the winter.

¶ 13    After hearing argument on the motion, on December 15, 2025, the court again denied pretrial release. It found that the initial-appearance court's findings were not erroneous, and it reaffirmed the ruling that Phelps "committed a detention-eligible offense, that she poses a real and present threat to both the complaining witnesses and persons in the community, and that there are no conditions or combinations of conditions that can mitigate the threat." The court specifically noted that, during a verbal altercation, Phelps allegedly went to her vehicle, retrieved an item, returned, and used it on Simmons. The court also relied on the specifics of Phelps's criminal history: her pending charge for resisting arrest showed that she was "someone who can't follow orders given by the police"; her conviction for aggravated battery on the public way showed that she had "issues with violence"' her conviction for harassing a witness who was a family member showed that she

was "someone who cannot let things go"; her conviction for aggravated unlawful possession of a weapon showed that she had access to guns; and the fact that she picked up the current charge while still on probation for aggravated battery of a police officer showed that "[s]he does not follow the rules of probation." Consequently, the court did not have faith that she would follow any conditions of release it might put in place.

¶ 14    On February 17, 2026, Phelps filed a motion for relief. See Ill. S. Ct. R. 604(h)(2) eff. Apr. 15, 2024). In the motion for relief, Phelps challenged only the court's finding that no combination of release conditions could mitigate the threat her release would pose to a person or to the community. The court denied the motion that same day, and Phelps appealed.

¶ 15                    II.  ANALYSIS

¶ 16    On appeal, Phelps challenges the court's findings (1) that the proof was evident or the presumption great that she committed a detainable offense, (2) that her release would pose a real and present threat to the safety of any person, persons, or the community, and (3) that no set of release conditions can mitigate that threat. See 725 ILCS 5/110-6.1(a)(1.5), (e) (West 2024). However, we agree with the State that Phelps waived her challenges to the first two findings by not raising those issues in her Rule 604(h)(2) motion for relief. See Ill. S. Ct. R. 604(h)(2) (eff. Apr. 15, 2024) ("Upon appeal, any issue not raised in the motion for relief, other than errors occurring for the first time at the hearing on the motion for relief, shall be deemed waived."). That leaves for our consideration only Phelps's challenge to the court's determination that no set of release conditions can mitigate the threat her release would pose.

¶ 17    Under the applicable statute, Phelps was presumed to be eligible for pretrial release, and the State was required to rebut that presumption by clear and convincing evidence. 725 ILCS 5/110-6.1(e) (West 2024). "Evidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74. The standard requires proof greater than a preponderance but not quite approaching the criminal standard of beyond a reasonable doubt.

*People v. Lee*, 2024 IL App (1st) 232137, ¶ 18. As relevant here, the State had to prove that "no condition or combination of conditions *** can mitigate *** the real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case." *Id.* § 110-6.1(e)(3). Because the parties proceeded strictly by proffer, our review is *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54.

¶ 18      On appeal, Phelps argues only that any perceived risk could be mitigated through electronic home monitoring, which, she contends, would sufficiently address concerns regarding community safety. We do not agree. As the trial court noted, Phelps has demonstrated through her past conduct a willingness to disregard rules designed to protect the public from her conduct, including pretrial-release conditions, probation conditions, and statutes forbidding felons from possessing guns. That track record, combined with her history of harassing a witness and resisting law enforcement—and the proffered facts of the charged offense—suggests a troubling tendency to act on impulse in a way that is both harmful to her own interests and dangerous to the safety of others. On this record, we agree with the trial court that the State has shown by clear and convincing evidence that no set of release conditions can adequately protect the community from the threat her release would pose. We therefore affirm the trial court's orders denying pretrial release.

¶ 19      III. CONCLUSION

¶ 20      Reviewed *de novo*, we agree with the trial court that no set of release conditions can adequately mitigate the threat Phelps would pose to the community in the event of her release. Accordingly, we affirm the denial of pretrial release.

¶ 21      Affirmed.